In the Matter of the Application of GEORGE TUTTLE BROKAW, Respondent, Life Tenant under and by Virtue of the Last Will and Testament of ISAAC V. BROKAW, Deceased, to Mortgage Premises on the Northeast Corner of Fifth Avenue and Seventy-Ninth Street, Manhattan, New York.

HOWARD CROSBY BROKAW and Another, Appellants.

First Department, February 4, 1927.

**Mortgages — life estate — application by life tenant to mortgage property of life estate under Real Property Law, §§ 67–71 — application might have been dismissed under Real Property Law, § 70, on objection of remaindermen — since petitioner was required to pay expenses, however, it was not wrong for court to appoint referee to take proof — life estate cannot be mortgaged, without written consent of life tenant and remaindermen who are not under disability, as required by Real Property Law, § 70 — Real Property Law, §§ 107 and 116, not applicable — proper consents not having been secured, it was error to authorize mortgage.**

An application to the court made by a life tenant under sections 67–71 of the Real Property Law, for permission to mortgage real property of the life estate, could have been dismissed as soon as it appeared that the remaindermen who were not under disability objected and that the consents required by section 70 of the Real Property Law would not be forthcoming, but since the petitioner was required to pay all expenses, it was not wrong for the court to order a reference to determine the advisability of mortgaging the life estate, for the court might, under the circumstances, have had the right to assume that the objection by the remaindermen would be withdrawn and the consents given.

A mortgage of a life estate cannot be directed in any case unless the life tenant and all remaindermen not under disability give their written consent, and

22

First Department, February, 1927.                    [Vol. 219

since the remaindermen in this case did not give their written consent, it was improper to direct that a mortgage be made.

Sections 107 and 116 of the Real Property Law have no application to a proceeding under sections 67–71.

APPEAL by Howard Crosby Brokaw and another from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of October, 1926, confirming the report of a referee and directing him to negotiate for and report respecting a proposed mortgage, and also from an order entered in said clerk's office on the 24th day of August, 1926, directing the referee to execute and deliver the mortgage.

*Yorke Allen* of counsel [*Stoddard & Mark*, attorneys], for the appellants.

*Harry J. Ahlheim* of counsel [*Alfred G. Reeves* and *Alexander S. Rowland* with him on the brief; *Reeves & Todd*, attorneys], for the respondent George Tuttle Brokaw, life tenant, etc.

*Harrison W. Gebhardt* of counsel [*Maurice Bloch*, special guardian], for the minors, respondents.

*Stanley G. Horan* of counsel [*Geller, Rolston & Blanc*, attorneys], for the respondent the Farmers' Loan and Trust Company, as trustee, etc.

O'MALLEY, J.  The orders appealed from were made in a proceeding instituted under sections 67 to 71 of the Real Property Law (as amd. by Laws of 1918, chap. 578, and Laws of 1920, chap. 639), which provide for the sale, mortgage or lease under certain specified conditions of real property held by a life tenant.  The application here was to mortgage.  The proceeding has resulted in a final order directing execution of the mortgage.  But throughout, the application has been strenuously resisted by certain of the adult remaindermen, not under disability, who have refused to execute and file their consents as provided in section 70.  The question presented is, therefore, whether such consents are a prerequisite to the proceeding, and more particularly to the two orders appealed from, the first of which confirmed the report of the referee and directed him to negotiate for and report the mortgage; and the second of which directed him to execute and deliver the mortgage.  It is necessary, therefore, to consider the provisions of law applicable, and more particularly section 70 of the Real Property Law.

Section 67, in so far as material to a determination of this appeal, specifies the circumstances necessary to authorize the proceeding.

It provides in substance that where property has been or hereafter shall be devised by will or conveyed by deed to a person for life, with remainder or remainders over, to " persons the identity of whom can not be definitely ascertained until the death of the person entitled to the life estate," the court may, by order, on such terms as may seem just and proper, " authorize the sale, mortgage or lease of such real property * * * whenever it appears to the satisfaction of the court that said real property, or some portion thereof, has become so unproductive or such circumstances or conditions have arisen subsequent to the devise or deed that it is for the best interest of the life tenant and of the remaindermen and of all persons * * * interested or to become interested in the proceeds of any sale * * * that a sale, mortgage or lease should be had, or that for other peculiar reasons, or on account of other peculiar circumstances, it is for the best interest of the life tenant and the remaindermen and of all persons," interested or to become interested, " that a sale, mortgage or lease should be had." It is further provided that the court shall not grant such order unless it satisfactorily appears " that a written notice, stating the time and place of the application therefor, has been served upon the life tenant, and upon every other person in being having an estate or interest, vested or contingent, in reversion or remainder, in said real property " or the proceeds of the sale. Provision is then made for service of notice upon persons interested.

Section 68 provides the manner in which the application shall be made. The court may itself take proof or appoint a referee to fully examine into the matter. If the application is granted the order must authorize the real property described to be sold, mortgaged or leased upon such terms and conditions as the court may prescribe.

Section 69 provides for the manner of making the sale, mortgage or lease through the referee who must enter into an agreement subject to the approval of the court and report such agreement under oath. If his report is confirmed he is required to execute under the direction of the court the deed, mortgage or lease of the real property in question.

Section 70, with which we are more particularly concerned, provides as follows:

" § 70. Effect of instruments upon sale, mortgage or lease. A deed, mortgage or lease made pursuant to a final order granted as provided in the foregoing sections sixty-seven, sixty-eight, and sixty-nine shall bind the remainders and reversion as well as the life estate in said real property and shall be valid and effectual against all minors, lunatics, persons of unsound mind, habitual

drunkards and persons not in being, interested in the real property aforesaid, or having estates or interests vested or contingent, in reversion or remainder in said real property, or in the proceeds of the sale thereof, and against all persons whether in being or not who may by appointment or otherwise have or acquire an interest in said property or in the proceeds of the sale thereof, but before the order directing the sale, mortgage or lease can be made, all adult persons not under disability having an interest, vested or contingent, in reversion or remainder, in said real property or in the proceeds of such sale, or having a power to appoint or dispose of said remainder, reversion or proceeds, or an appointee under such a power, and who are entitled to notice under section sixty-seven of this chapter, must make and file with the clerk of the court in which the proceedings have been instituted, a written instrument, duly executed and acknowledged, consenting that such an order of sale, mortgage or lease may be made, and in no event shall such order be made without the like written consent of the life tenant if not suffering from disability."

Before construing the provisions of the section above quoted, the relation of the parties interested in this appeal will be stated. Petitioner, respondent, George Tuttle Brokaw, is the present life tenant of the property involved and is now in possession, under and by virtue of the last will and testament of his father, Isaac V. Brokaw. By the provisions of said will the property in question was devised to his widow for life, remainder to his son, the said George Tuttle Brokaw, for life, remainder in fee to the children of said George Tuttle Brokaw living at his death, and to the issue *per stirpes* of any deceased child or children. The will further provided that in the event no child or the issue of any such child of George Tuttle Brokaw should be living at the latter's death, then the remainder was to go in fee in equal shares to any surviving children of the testator, and the issue of any deceased child *per stirpes*.

The widow of the testator is now dead, and as already appears, the petitioner, respondent, George Tuttle Brokaw, is enjoying his life estate. He has one child, an infant daughter. The testator, Isaac V. Brokaw, left three other children him surviving, all now living, namely, Irving Brokaw, who has three children, one an adult; Howard Crosby Brokaw, who has three children, one of whom, Julia Eloise Brokaw, is an adult and with her father, an appellant herein; a daughter, Elvira Brokaw McNair, who has an adult daughter, Elvira Juliane Fairchild, who in turn has one infant daughter. From this it follows that if the respondent George Tuttle Brokaw should die without issue him surviving,

the appellant, objectant, Howard Crosby Brokaw, or in case of his prior death, the appellant, objectant, Julia Eloise Brokaw, would succeed to fractional interests in the remainder. It is to be again observed that the appellants, Howard C. Brokaw and his daughter, Julia Eloise Brokaw, have an interest by way of remainder in the said real property; that they are both adults, not under disability and as such clearly entitled to notice of the application by the provisions of section 67, *supra*.

It may be further stated that in the view I take of the particular question involved, we are not concerned with the merits of the application for the mortgage of the real property in question. We may assume that the evidence presented to the referee fully warranted him in reporting to the court that it was for the best interests of the life tenant and the remaindermen that the real property be so mortgaged and that the report of the special guardian on behalf of the infant remaindermen to the same effect was wholly proper and justifiable.

We may assume, also, as contended by the respondent, that the house located on the real property in question is antiquated and in an unlivable condition and that the property could be rendered profitable by the erection thereon of a modern apartment building. But with none of these matters are we concerned. We are bound by the plain provisions of the statute under consideration.

Reference to section 70, *supra*, discloses that two court orders are required to direct a sale, mortgage or lease and, as has occurred in this proceeding, three may be proper. Here the court, instead of inquiring itself into the circumstances of the application, appointed a referee to take the proper proof and report, a procedure authorized by section 68, *supra*. It has been held that an application under these provisions of law should be forthwith dismissed the moment it appears that objection is made by life tenants or remaindermen not under disability, and that the consents required by section 70 will not be forthcoming. (*Matter of Frutchey*, 113 Misc. 45.) The order made herein appointing the referee, however, cannot be said to have been improvidently made. The court might well have assumed that the objections would be withdrawn and the consents given before the making of the orders herein appealed from. Moreover, before such order was made the petitioner was required to agree to pay the expenses of the proceedings.

A proper construction of section 70 permits, I think, of but one conclusion on the question here presented. It provides that " before the order directing the sale, mortgage or lease can be made, all adult persons not under disability having an interest, vested or contingent, in reversion or remainder," in the property.

or its proceeds, and who are entitled to notice under the provisions of section 67, " *must* make and file with the clerk of the court * * * a written instrument, duly executed and acknowledged, consenting that such an order of sale, mortgage or lease may be made, and in no event shall such order be made without the like written consent of the life tenant if not suffering from disability."

Respondents urge that when the section is considered as a whole and in connection with the other provisions of the Real Property Law, particularly section 67, *supra*, and sections 107 and 116, the portion under consideration is permissive, rather than mandatory, and the word " must " is to be construed as " may," in so far as adult remaindermen or reversioners are concerned; and that the only person within the purview of the statute whose consent is absolutely necessary is the life tenant. In support of this conclusion various considerations are urged upon us. The language of section 67 is first relied upon to support such construction. It is urged that because the notice therein provided to be served may run to an adult person or beneficiary without the State, or an absentee, such service to be made in such manner as the court or justice may prescribe, such provision contemplates a proceeding or situation where adult remaindermen or reversioners may not appear or be in a position to give consent. Therefore, the court may, under section 70, make the necessary orders which will bind the person without the State or the absentee, and this even though a written consent is not obtained.

With this conclusion I am unable to agree. The provisions referred to relate merely to service of notice of the application. It simply relieves the petitioner of making personal service or service within the State, if the court so order. But provision for such service does not mean that a person so served must not also give consent. Both notice and consent are required. The *manner* of giving notice is left in some instances to the discretion of the court, but notice in some manner is necessary. Consent on the other hand is also necessary. The manner in which consent is to be evidenced is not left to the court's discretion, but is prescribed by the language of the statute itself.

The last portion of section 70, providing that " in no event shall such order be made without the *like* written consent of the life tenant if not suffering from disability," does not support respondents' contention that the only consent absolutely required is that of the life tenant. It is to be observed that the life tenant is referred to in a class following that which relates to remaindermen and reversioners. This is a logical separation because of diversity of estate. The difference in phraseology is simply a choice of

expression. The two broad classes are joined together by the conjunctive " and," and not separated by the disjunctive " but," which would have been the natural word to use if the intent had been that now contended for by respondents. The word " like " in the clause relating to life tenant refers back and connects the portion relating to remaindermen and reversioners. As to both of these broad classes, the statute provides that the orders in question may not be made without consent.

Nor can the language of the first half of the section be construed to support respondents' position. While it is there provided that the orders made as prescribed in the preceding sections shall bind the remainders and reversion as well as a life estate, and that the deed, mortgage or lease " shall be valid and effectual against all minors, lunatics, persons of unsound mind, habitual drunkards and persons not in being," this provision contemplates an order properly made. The last half of section 70 provides that before the order directing the sale, mortgage or lease can be made, all adult persons having an interest and who are not under disability, and who are entitled to notice, and who have an interest by way of reversion or remainder, equally with the life tenant, must execute and file the consent required. An order made without such consent is not an order properly made. Moreover, the class of persons referred to whose personal consent may not be necessary, are a special class, wards of the court, for whom special guardians or other representatives on behalf of the court would be appointed, and who are under a disability with respect to the giving of consent on their own behalf. Obviously, persons of this character could not consent except through the court. The latter half of the section, it seems to me, deals with another class already referred to, those not under disability.

Nor will reference to sections 107 and 116 of the Real Property Law (as respectively amd. by Laws of 1920, chap. 639, and Laws of 1924, chap. 414) aid respondents. The omission in these sections of the provisions of section 70 unqualifiedly requiring consent is explainable. Sections 67 to 70 concern themselves with *legal* estates. Sections 107 and 116 relate to *equitable* or *trust* estates. In the former full and complete control within common-law principles is given to the one entitled to the estate. In the latter the *cestui* obtains but a beneficial interest and legal title carrying with it legal possession and control of the estate is in the hands of the trustee. It is only logical, therefore, in the case of a sale, mortgage or lease of a legal estate to give those having an interest therein a greater degree of control than in the case of a trust estate, where a beneficial or equitable owner has a restricted interest from the

very outset. Moreover, section 107 is specifically restricted to the two sections immediately preceding and section 116 is applicable only to the article in which it is found which relates to trust estates. Section 70 is neither one of the two sections immediately preceding section 107 nor is it one of the sections within the particular article embracing section 116.

Neither are respondents aided by the note of the Board of Statutory Consolidation in their report to the Legislature of 1907 (N. Y. Assem. Doc. 1907, Vol. 18, No. 65, pt. 4, p. 4897). Such note relates generally to all sections. It nowhere specifically states, nor do we think it impliedly holds, that it was the intent of the consolidators that under section 70 a written consent might in the instant circumstances be dispensed with, provided that notice of the application had been given. But even assuming that such intent might be said to be expressed, it must be remembered that we are concerned, not with the intent of the consolidators, but with the intent of the Legislature as expressed in the statute before us.

The plain intent of section 70 is that the consent not only of the life tenant, but the consents of the remaindermen or reversioners not under disability are an absolute prerequisite to the making of the orders specified in section 69.

It follows, therefore, that the orders appealed from should be reversed, with costs, and the petition dismissed, with costs to the appellants.

Dowling, P. J., Finch, McAvoy and Martin, JJ., concur.

Orders reversed, with costs, and the petition dismissed, with costs to the appellants.